UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                        Case Number 18-20198

v.                                                 Honorable David M. Lawson

DENVER LEE,

        Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION
## FOR JUDGMENT OF ACQUITTAL OR FOR NEW TRIAL

Defendant Denver Lee, having been convicted of being a felon in possession of a firearm, contrary to 18 U.S.C. § 922(g)(1), has moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c), or in the alternative for a new trial under Rule 33. Lee argues that the evidence was insufficient to support a critical element of the crime: knowing possession of the gun. And he contends that his trial was unfair because of the cumulative effect of unspecified evidentiary rulings that did not favor him. Because the evidence when viewed in the light most favorable to the prosecution established beyond a reasonable doubt that Lee possessed a firearm as the indictment charged, and because the Court's evidentiary rulings were proper, the motion will be denied.

I.

The facts of the case as reflected in testimony and exhibits at trial are mostly unchallenged by the defendant.

On the evening of February 15, 2018, around 9:00 p.m., four officers of the City of Detroit police department were on patrol near Sunderland Road and Seven Mile Road in Detroit. The officers attested that they knew this to be a "high crime area" of the city. They saw two cars parked

next to each other in the middle of Sunderland, one facing north and one facing south, and they approached the cars to inform the drivers that they were blocking traffic.

As they approached, the officers saw a driver seated in each car and two men, one of whom was defendant Denver Lee, standing in the street between the cars. The officers observed that the gathering of men and cars was preventing other vehicles from passing. As the police approached the group, Officer Darrell Brents turned his patrol car's searchlight on them. He observed that Lee looked toward the police cruisers with a "wide-eyed nervous expression," then clutched at the front center pocket of the sweatshirt that he was wearing and quickly walked north, away from the police cruiser, looking back at the officers as he walked. Brents observed that Lee's walk appeared suspicious, as if he were hiding something, and Brents believed that Lee might be about to run from the officers. Brents stepped out of his patrol car, along with the other officers, and began to follow Lee, while the other officers approached the persons who were still near the parked cars.

As Brents approached Lee near the front of one of the cars, Lee turned toward him. The scout car's light was still illuminating Lee. Brents saw Lee still clutching the pocket of his hooded sweatshirt, and still with the same wide-eyed and nervous expression. At that point, Brents was around five or six feet from Lee, and as he observed Lee's pocket, he saw a heavily weighted bulge in the pocket where Lee was grabbing. Brents believed the bulge to be a firearm, and he frisked Lee, feeling the outside of the sweatshirt pocket. He immediately felt an object that he recognized as a gun; he then reached into the pocket and recovered a Smith & Wesson Bodyguard .380 caliber handgun, loaded with 6 live rounds.

Brents clearly testified at trial that he located and retrieved the subject weapon directly from Lee's sweatshirt pocket:

> Q. And when you did that patdown, did you feel the area of that weighted bulge you had seen before?

> A. Yes, sir.
>
> Q. And could you identify what that item was?
>
> A. Immediately identified it to be a handgun.
>
> Q. How did you know that?
>
> A. Just experience.
>
> Q. Have you frisked people before in patrol?
>
> A. Yes, sir.
>
> Q. How many times?
>
> A. Numerous. I can't give an accurate answer on that.
>
> Q. And have you felt firearms through a pocket like that before?
>
> A. Yes, sir.
>
> Q. When you recognized the item was a firearm, what did you do next?
>
> A. Well, I immediately notified my partners that Mr. Lee was armed and I reached into the pocket and retrieved the weapon.

Trial Tr., Vol. II, ECF No. 41, PageID.421.

Lieutenant Willie Duncan corroborated Brents's testimony and stated that, while standing beside Lee and holding Lee's arm, he observed Brents recover the weapon from Lee's sweatshirt pocket:

> A. I grabbed Mr. Lee by his right arm. I was holding his arm. I observed Officer Brents grab a handgun from his front pocket, hoody pocket. I placed him in handcuffs. And once Mr. Lee was secured and handcuffed, I immediately went back to talk to the driver of the vehicle.
>
> Q. And I want to take that step-by-step just a little bit. So when you first arrived, had Officer Brents already recovered a gun from Mr. Lee?
>
> A. No. He was recovering it. He recovered it once I was already there.
>
> Q. Okay. And did you see him actually reach into Mr. Lee's pocket and recover that gun?
>
> A. I saw him coming out of his pocket with a handgun, yes.

| | | |
|---|---|---|
| Q. | | Okay. Do you remember which hand he was using when he recovered it? |
| A. | | His left hand. |
| Q. | | What kind of gun was it that he recovered? |
| A. | | It was a blue steel automatic. |

Trial Tr., Vol. II, ECF No. 41, PageID.506.

Finally, Officer Shaun Dunning also testified that he observed Brents's recovery of the gun from Lee's pocket. When asked what Dunning did as he approached the parked vehicles at the scene, Dunning stated:

> A. I immediately went to Mr. Denver Lee. He had a coffee cup in his hand. I removed the coffee cup and put it to the ground. And at that point I assisted Lieutenant Duncan with arresting the defendant.
>
> Q. Did you see anything as you were walking towards the defendant?
>
> A. I did. I observed Officer Brents motioning towards his left side as if he was pulling out and away a firearm, away from Mr. Denver Lee.
>
> Q. Did you ever see a firearm that evening?
>
> A. I did. I saw a black small caliber firearm, later to be known as a black Smith & Wesson .380 caliber.

Trial Tr., Vol. II, ECF No. 41, PageID.529-30.

The government introduced in evidence video recordings from the officer's body and dash cameras. Although the videos were not crystal clear, they generally corroborated the officers' testimony.

Lee testified on his own behalf at trial, denying that he at any time possessed a firearm. He acknowledged that he was present on Sunderland that evening, explaining that he was meeting an employee, Lena Savatti, who was to give him some cash. Lee said that when he arrived, both cars were in the street. One of them was driven by Savatti. She was in her car when she handed him the cash. The handgun that the police maintain was seized from Lee was registered to Savatti.

Lee said that he did not see a handgun in her car, and he never took possession of a gun from her. Instead, the police arrived suddenly, shined a light on him, and put him in handcuffs.

II.
A.

To obtain a conviction for a violation of 18 U.S.C. § 922(g)(1), as charged in this case, the government must show that the defendant knowingly possessed a firearm, at the time he was prohibited by law from doing so because of a prior felony conviction, and that the firearm had traveled in or affected interstate commerce. *United States v. Farrad*, 895 F.3d 859, 871 (6th Cir. 2018) (citing *United States v. Schreane*, 331 F.3d 548, 560 (6th Cir. 2003)).

Lee stipulated at trial that he had a prior felony conviction, and he did not challenge the interstate-commerce element of the crime. However, he contends that the evidence at trial was insufficient to support a finding beyond a reasonable doubt that he possessed the firearm the police seized at the scene. He contends that the jury could not reasonably have concluded that he knew that the gun was on his person, because the officers on the scene testified that it was concealed in his pocket. He also contends that the fact that the gun was registered to the owner of a vehicle that was at the scene suggests that it is less likely that he possessed the gun. Lee's gloss on the trial testimony is that the "case simply involved a defendant who happened to be close to a gun when apprehended, and without additional facts that clearly allow a rational inference that the defendant knew the gun was there, a rational jury could not find the possession element satisfied beyond a reasonable doubt."

The applicable law is well known to the parties. Under Federal Rule of Criminal Procedure 29, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. Rule Crim. P. 29(a). But "[w]hen considering a challenge to the sufficiency of the evidence, 'the relevant question is whether, after viewing the

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Osborne*, 886 F.3d 604, 608 (6th Cir. 2018) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). When evaluating the record, "'[a]ll reasonable inferences and resolutions of credibility are made in the jury's favor," and the Court "may not 'weigh the evidence presented, consider the credibility of witnesses, or substitute [its] judgment for that of the jury.'" *Ibid.* (quoting *United States v. Tragas*, 727 F.3d 610, 617 (6th Cir. 2013); *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010)).

Absent an admission, proof of a defendant's state of mind must be through circumstantial evidence. However, no distinction is made between the weight afforded to different sorts of evidence, and the Court must "afford the same weight to both circumstantial and direct evidence." *Graham*, 622 F.3d at 448. "A defendant's attempt to attack witness credibility 'simpl[y] challenges . . . the quality of the government's evidence and not the sufficiency of the evidence.'" *Ibid.* (quoting *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006)). "It is well settled that when a defendant 'offer[s] an innocent explanation for the incriminating facts proved by the government, the jury [i]s free to disbelieve [it].'" *United States v. Schreane*, 331 F.3d 548, 562 (6th Cir. 2003) (quoting *United States v. Ledezma*, 26 F.3d 636, 641 (6th Cir. 1994)).

As noted above, three police officers testified that Officer Brents saw the defendant clutching at a heavy bulge in his sweatshirt pocket, and that he almost immediately thereafter retrieved a firearm from the defendant's pocket when he was frisked. That certainly is sufficient evidence to support a finding beyond a reasonable doubt that Lee possessed the gun. *United States v. Bell*, 477 F.3d 607, 614 (8th Cir. 2007) ("Based on the evidence presented at trial, a reasonable jury could find Bell possessed the revolver. . . . Officers observed Bell apparently reaching for the revolver when they entered the bedroom [and the] gun was [located] in Bell's pants pocket.")

(affirming conviction for possession of firearm in furtherance of a drug crime). Far weaker showings than that made at trial here have been found to support an inference of possession, where the defendant was spotted by an officer with a heavy, gun-shaped object concealed in his pocket, and then a firearm was found nearby his person or along his path of flight when he was arrested. *E.g.*, *United States v. Brown*, No. 17-3364, 2018 WL 5832240, at *2 (3d Cir. Nov. 7, 2018) ("The officers who observed Brown testified that he had a gun in his pocket. Although Brown did not possess a gun on his person at the time he was arrested, a juror could reasonably conclude the bulge weighing down Brown's jacket — which officers observed and video surveillance captured — was the gun officers found nearby, shortly after locating Brown, in a backyard where it did not belong, along the route down which officers had just pursued him.").

The evidence of Lee clutching his sweatshirt pocket, and his startled look when the officers shined the search light on him, supports the conclusion that he knew that he was carrying a handgun. That circumstantial evidence permitted the jury reasonably to conclude beyond a reasonable doubt that Lee knowingly possessed a firearm on the night in question.

Lee's contradictory testimony and other circumstantial evidence does not call into question the sufficiency of the officers' testimony supporting the element of possession. As the government points out, the jury reasonably could have inferred that the registration of the gun in the name of Lee's employee was due to the fact that the employee either bought the gun for the defendant or allowed him to borrow it from her, because he could not purchase a firearm in his own name. And Lee's contrary testimony is not fatal to the sufficiency of the evidence because the jury was free to disbelieve any or all of it.

B.

Lee also advances an undeveloped argument, unsupported by any legal authority or citations of the record, in which he insists that the cumulative effect of the Court's adverse rulings on "each and every motion and objection made through counsel, both pretrial and at trial" entitle him to a new trial, because the "cumulative effect" of all those (unspecified) rulings rendered the trial fundamentally unfair. He also contends, without elaboration, that his trial was prejudiced by "errors committed by the prosecution," and "inflammatory and prejudicial evidence concerning Mr. Lee's prior record being used as impeachment of his own testimony at trial." That argument also is unsupported by any legal authority or citations of the record. Lee does not identify what evidence of prior convictions was improperly admitted, but he asserts, without elaboration, that "[i]t is wholly improper to introduce such inflammatory evidence (prior convictions involving guns and drugs), and to appeal to juror's emotions, as happened here."

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "In order to obtain a new trial based upon cumulative error, [the defendant] must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *United States v. LaVictor*, 848 F.3d 428, 455 (2017) (quotations omitted). Lee has not met that standard here.

The only specific trial errors to which the defendant even alludes in passing are the rulings admitting evidence of his three prior convictions. The Court initially ruled that his prior conviction for a firearm offense would not be admissible to impeach him under Evidence Rule 609 because the similarity of that offense to the charged crime would cause substantial unfair prejudice outweighing the evidence's probative value. *See* Fed. R. Evid. 403, 609(a); *United States v. Ray*, 803 F.3d 244, 261 (6th Cir. 2015). However, after Lee testified that he shunned guns, the Court

allowed the government to impeach Lee's statement with evidence of the prior firearm conviction, because the defendant's testimony conferred greater probative value that recalibrated the balance under Rule 403.

Lee has not identified any factual basis or legal authority for excluding the convictions, and he has not even explained how the Court erred in its rulings on the evidence. It is undisputed that the two drug convictions occurred within the previous ten years, and convictions for prior drug offenses routinely are admitted in federal felony criminal trials to impeach a testifying defendant's credibility. *E.g.*, *United States v. Gaitan-Acevedo*, 148 F.3d 577, 591 (6th Cir. 1998) (affirming admissibility of two prior drug convictions at the defendant's trial on charges of conspiracy to possess with intent to distribute marijuana). The defendant has not pointed to any contrary authority or even attempted to explain how the admission of the drug convictions violated Rule 609 or rendered his trial fundamentally unfair.

The prior conviction for gun possession was admissible directly to contradict the defendant's own testimony that as a matter of principle he never possessed guns or allowed guns in his presence. "A party can open the door to evidence about prior convictions regardless of whether the conviction meets Rule 609's requirements"; once that occurs, the opposing "party may introduce evidence to impeach a witness's specific testimony by contradiction[;] [t]his principle applies to the admission of prior convictions." *United States v. Moon*, 802 F.3d 135, 146 (1st Cir. 2015) (quotation marks and alterations omitted). Lee insisted during his testimony that he was not guilty because he never allowed himself to be around guns. Trial Tr. Vol. II, ECF No. 41, PageID.575 ("I don't want no guns. . . . I don't have guns around me. I don't do nothing, bro. I don't have nothing around me, because I'm always the hit."). The evidence of the defendant's prior conviction for being a felon in possession of a firearm was admissible directly to contradict

that testimony and to suggest that he was not so scrupulous in his avoidance of firearms as he claimed.

C.

The defendant does not offer any developed argument or any factual basis or legal authority for his contention that numerous unspecified errors rendered his trial fundamentally unfair. The undeveloped objection to the verdict based on supposed unidentified errors therefore is waived. *Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017) ("A party waives issues that he adverts to in a perfunctory manner, unaccompanied by some effort at developed argumentation.").

III.

The parties' motions and responses set forth the issues and arguments. Oral argument is not necessary to assist the Court in the determination of the motion. The evidence was sufficient to permit the jury to find all the elements of the charged crime beyond a reasonable doubt. There was nothing that occurred during the trial that rendered it fundamentally unfair.

Accordingly, it is **ORDERED** that the Court will decide the motion on the papers without oral argument, *see* E.D. Mich. LR 7.1(f)(2), and the hearing scheduled for January 25, 2019 is **CANCELLED**.

It is further **ORDERED** that the defendant's motion for a judgment of acquittal or for a new trial (ECF No. 43) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date: January 17, 2019

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on January 17, 2019.

                        s/Susan K. Pinkowski
                        SUSAN K. PINKOWSKI