UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                        Case Number 18-20198

v.                                           Honorable David M. Lawson

DENVER LEE,

                Defendant.

_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Denver Lee has filed a motion asking the Court to resentence him to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239, or alternatively, to recommend to the Bureau of Prisons (BOP) that he be transferred to home confinement under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 18 U.S.C. 12003(b)(2).  Lee bases his request on extraordinary and compelling circumstances, including his obesity, chronic bronchitis, and race, which he contends increase his risk from possible complications if he were to be infected with the COVID-19 disease.  The government concedes that the request for release has been administratively exhausted and that Lee's obesity constitutes a sufficient showing of extraordinary and compelling medical risk to satisfy the second required element for compassionate release.   However, it argues that the Court is without jurisdiction to grant the motion because Lee's conviction is on direct appeal, and the motion should be denied on the merits because if released, Lee would be a serious danger to the community.  Because the factors in 18 U.S.C. § 3553(a), which the Court must consider, do not favor release, the Court will not reduce the sentence.  The Court also does not believe that a recommendation for early placement by the BOP to home confinement is appropriate.  The motion will be denied.

I.

On October 18, 2018, after a jury trial, defendant Denver Lee was convicted on one charge of possessing a firearm after having been convicted of a felony.  On September 9, 2019, the Court sentenced him as an armed career criminal to a term of 180 months in prison.  He has served approximately 22 months, and he presently is in the custody of the Bureau of Prisons at FCI Hazelton, a medium security facility that houses around 1,500 inmates.  Public records of the BOP indicate that the defendant is scheduled to be released from prison on July 25, 2031.  Lee is 38 years old.

Lee appealed his conviction and sentence, arguing, among other things, that a required element of the offense had not been adequately charged and proven at trial, and that his trial attorney was ineffective in other respects.  On August 6, 2020, Lee filed through counsel his motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.  In his motion, Lee argued that he is qualified for release because of his obesity, chronic bronchitis, and race.  The government has filed a response opposing the motion on jurisdictional grounds and alternatively on the merits.

The most recent data disclosed by the BOP indicates that there are two active coronavirus case among staff at the Hazelton facility.  Also, five staff previously had the disease but now have recovered.  Reports indicate that no inmates have been infected and no inmates or staff have died.  *See* https://www.bop.gov/coronavirus/.

II.

The government argues that Lee's pending appeal of his conviction and sentence deprives the Court of jurisdiction to address his motion for compassionate release.  As a general matter, filing a notice of appeal transfers adjudicatory authority over a case from the district court to the

court of appeals.  *United States v. Carman*, 933 F.3d 614, 617 (6th Cir. 2019).  But a notice of appeal "divests the district court of its control [only] over those aspects of the case involved in the appeal."  *Ibid*. (citing *Griggs v. Provident Consumer Disc. Co*., 459 U.S. 56, 58 (1982) (per curiam)); *see also United States v. Holloway*, 740 F.2d 1373, 1382 (6th Cir. 1984).  When the notice of appeal is from a final judgment, "expansion of a district court's judgment [is] not permitted while an appeal is pending." *NLRB v. Cincinnati Bronze, Inc*., 829 F.2d 585, 588 (6th Cir. 1987).  Nonetheless, the district court retains jurisdiction to enforce the judgment, to "proceed with matters that are in aid of the appeal," *Taylor v. KeyCorp*, 680 F.3d 609, 616 n.8 (6th Cir. 2012) (citations omitted), and to act on remedial matters that are unrelated to the merits of the appeal, *Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Natural Res.*, 71 F.3d 1197, 1203 (6th Cir. 1995).

Lee's compassionate release motion based on the COVID-19 pandemic in no way relates to any aspect of his direct appeal from the trial verdict, which is based on a Fifth Amendment challenge to the proof of required elements of his conviction and an argument that his trial counsel was ineffective, depriving him of a right under the Sixth Amendment.  That alone distinguishes the cases that the government relies on.  For instance, in *United States v. Martin*, No. 18-834, 2020 WL 1819961, at \*1-\*2 (S.D.N.Y. Apr. 10, 2020), the defendant appealed the denial of several of this Court's orders, including orders denying various requests to modify the defendant's sentence. In his brief on appeal, the defendant also expressly challenged the Court's order denying the BOP's previous motion for compassionate release.  Similarly, in *United States v. Walls*, No. 92-80236, 2020 WL 1934963 (E.D. Mich. Apr. 22, 2020), the district court issued an indicative order denying a compassionate release motion, but the defendant had a pending appeal of the denial of a previous motion for compassionate release based on defendant's serious physical and mental conditions.

Lee's pending appeal does not address any aspect of his sentence that falls under 18 U.S.C. § 3582(c)(1)(A)(i), which is the statute that governs the present motion.  Here, he seeks emergency relief based on his medical condition and the effects of the global pandemic that may jeopardize the health and lives of prison inmates.  Although the Court could address the merits of the instant motion by means of an indicative ruling under Federal Rule of Criminal Procedure 37(a), there is no need to proceed that way because this motion does not involve any "aspects of the case involved in the appeal." *Carman*, 933 F.3d at 617.

III.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).  "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.*  "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A).  Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a)' . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)).  The defendant here relies on subparagraph (i) of the statute.  Under that provision, the Court can order a reduction of a sentence, even to time served, *first*, "after

- 4 -

considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute.  The commentary adds gloss, which does not have the force of law.  *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied, and it also concedes that the defendant has established that he has at least one sufficiently serious risk factor to warrant consideration of early release.

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).  The defendant's age (38) does not put him in a high-risk category, but he correctly points out that other pertinent recognized risk factors include obesity (BMI > 30).  The defendant's medical records indicate that at an October 2019 exam he had a BMI of 37.2, well over the obesity threshold of 30, which the government concedes

is a recognized serious medical risk factor.  *See* Medical Report dated Oct. 16, 2019, ECF No. 97, PageID.1328.  However, the records submitted do not substantiate the defendant's assertion that he has "chronic bronchitis," because the only back up for that is a letter from a doctor that states merely that Lee was "treat[ed] for bronchitis," in 2017, with no further details of the nature or persistence of the condition.  *See* Letter dated June 8, 2020, ECF No. 92-9, PageID.1284. Moreover, chronic bronchitis is not among the conditions recognized in the most current CDC guidance as indicating an increased risk of serious consequences from coronavirus infection. Nevertheless, the defendant's severe obesity is enough to sustain the required showing under the second element of the compassionate release analysis, as the Court has held in other cases.  *E.g.*, *United States v. Edwards*, No. 17-20716 (E.D. Mich. Aug. 17, 2020).

Lee also argues that his race elevates his risk of severe consequences from infection with the coronavirus.  But, as other courts have recognized, the fact of an inmate's race by itself does not constitute a risk factor for COVID-19 in the same way, as, for instance, an underlying medical condition does.  *See, e.g.*, *United States v. White*, No. 15-20040, 2020 WL 2733891, at *5 (E.D. Mich. May 26, 2020); *Carlos M.D. v. Anderson*, No. 20-3908, 2020 WL 2487646, at *8 (D.N.J. May 14, 2020); *United States v. Leigh-James*, No. 15-188, 2020 WL 4003566, at *8 (D. Conn. July 15, 2020).

However, even if the defendant has made the required showing of extraordinary medical risk, the absence of any past or present infections among inmates at his facility mitigates against a finding that release is warranted in this case.

Published reports suggest that officials at FCI Hazelton have had unusual success in mitigating the dangers of the pandemic, since there have been only seven documented cases of infection among prison staff, and no reported infections among inmates.  The government's

position that the defendant is at low or no risk is somewhat less reassuring, considering the BOP's admitted failure to implement any comprehensive prophylactic testing program, which calls into doubt the figures that it has reported. *Wilson*, 961 F.3d at 849 ("The flaws inherent in the half-measures employed by the BOP are amplified by the BOP's inability to test inmates for COVID-19. At the time of the preliminary injunction, the BOP had only obtained 75 tests for roughly 2,500 inmates at Elkton. The fact that more than two-thirds of those tests came back positive suggests an extremely high infection rate, but the BOP's testing shortage ensured that the record would not reflect the precise figure.") (Cole, Chief J., concurring); *see also United States v. Campbell*, No. 03-4020, 2020 WL 3491569, at *9 (N.D. Iowa June 26, 2020) ("As of June 23, 2020, no cases of COVID-19 at Yankton FPC had been reported. However, without knowing whether the BOP is actively testing inmates and staff members for COVID-19 at Yankton FPC, the lack of active confirmed cases does not mean COVID-19 is not present at the facility. Nor does it mean there will not be a future outbreak at the facility. As the Government acknowledges, despite extensive measures to prevent transmission, more federal inmates will inevitably contract COVID-19 going forward."). Nevertheless, the available information indicates that Lee's risk of infection is as low as it would be at home, and perhaps lower since the measures taken by BOP appear to have minimized the spread at Hazelton despite the recent acceleration of the pandemic among the public at large,  including in West Virginia, where recent daily case counts are trending within range of the highest levels observed during the pandemic. *See* Coronavirus Statistics: West Virginia, https://www.worldometers.info/coronavirus/usa/west-virginia/.

Despite the ongoing hazards of the pandemic, it has been widely held that the mere possibility that COVID-19 may spread to a particular prison cannot independently justify compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  A

"generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release identified by the Sentencing Commission." *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020).

B.

Even if the defendant has made a satisfactory showing of extraordinary and compelling circumstances, early release is not justified in this case because the relevant 3553(a) factors weigh heavily against discharging him into the community.

The government insists that compliance with the Sentencing Commission's policy statement on compassionate release is mandatory, pointing to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. But that requirement is a condition of 3582(c)(1)(A)(ii). Lee has invoked 3582(c)(1)(A)(i), which contains no such requirement.

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct," *id.* § (2)(A), (C), in light of "the history and characteristics of the defendant," *id.* § (2). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

Lee's crime was relatively serious because it involved carrying an illegally possessed gun on his person in a public setting, although the Court at sentencing commented that it was rather a

"garden variety" weapon possession offense that did not involve any brandishing or violent conduct.  However, the defendant's criminal history, which spans nearly two decades, was extremely troubling to the Court at the time of sentencing.  Lee has eight prior convictions, seven of which were felonies.  He was twice convicted of illegally possessing firearms before being charged with the instant offense.  One of those prior crimes involved an alleged robbery at gunpoint, although further exploration of the defendant's criminal history at sentencing revealed that he pleaded to a lesser offense.  *See* Sentencing Tr., ECF No. 90, PageID.1190.  After his earliest conviction in 2000, while on probation after a conviction for simple possession of drugs, he was twice arrested and charged with other crimes including possessing a gun and more drugs.  He served a two-year term for those latter crimes and, when released to probation, he again was caught and convicted for dealing drugs.  After being paroled in 2002, he once again was convicted for drug crimes while under supervision.  Again in 2004, while on parole, he was arrested and charged with armed robbery, although he pleaded guilty to a lesser offense.  After he was released on parole in 2012, he was yet again convicted for dealing drugs.  Finally, while on parole from that conviction, he was arrested and convicted on the present gun charge.

That lengthy history of drug- and gun-related offenses suggests that the defendant is, if not entirely incorrigible in his adherence to a life of crime, very nearly so.  Repeatedly he has been caught and convicted, and each time he was released he returned to a life of crime.  He repeatedly has procured and carried guns despite unquestionably being disqualified from doing so by his long list of felony convictions.  His habit of going armed persistently has been demonstrated over the years and allegedly facilitated at least one violent personal confrontation.  The defendant never successfully completed a term of supervision without committing additional serious crimes, and that alone weighs heavily against any prospective hope that any term of supervision, including

home confinement, would be adequate to discourage him from further criminal behavior that could pose a serious danger to the community.

The below-guideline sentence in this case was dictated by the mandatory minimum prison term of 180 months specified by 18 U.S.C. § 924(e), but the Court also found that a 15-year penalty was warranted by the seriousness of the crime and the defendant's criminal background. The Court determined at the time that the sentence was necessary to achieve the goals of sentencing Congress identified in 18 U.S.C. § 3553(a), and one of those goals — protection of the public — was paramount in this case.

The defendant has done well enough in a prison setting and has completed his high school level education. Also, in contrast with his previous spells in prison, he has avoided further citations for serious misconduct. However, commendable though Lee's conduct in prison has been, it does not alter the historical fact that the Court imposed a sentence that was not greater than necessary to achieve congressional goals, considering the mandatory minimum prison term. Reducing that sentence to less than a fifth of the original mandatory term certainly would not promote respect for the law or provide a just punishment for the defendant's crime. Nor would it serve as a significant deterrent to others; to the contrary it severely would undermine the goals of both specific and general deterrence, which is of particular concern with a defendant who repeatedly has shown that he is all but immune to the deterrent effect of every sanction the criminal justice system has summoned for his misdeeds.

Consideration of the factors in 18 U.S.C. § 3553(a) weighs heavily in this case against granting any reduction in sentence, and those factors foreclose relief, particularly in conjunction with the remote risk of infection in the present circumstances of confinement.

- 10 -

III.

Lee also requests that the Court recommend that the BOP place him in home confinement under the CARES Act, 18 U.S.C. § 12003(b)(2).  A defendant's request for home confinement under the CARES Act is different than a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  *See* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020); *United States of America, v. Benjamin Gordon*, No. CR416-082, 2020 WL 3964041, at *1 (S.D. Ga. July 13, 2020).  Section 12001(b)(2) is directed at the Attorney General.  If he finds that emergency conditions will materially affect the functioning of the BOP, the Director of the BOP may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of 18 U.S.C. § 3624(c)(2).  Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020).  And the Attorney General has done just that: in a memorandum issued on April 3, 2020, the Attorney General utilized his authority under the CARES Act to direct the BOP to "immediately maximize appropriate transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and at other similarly situated BOP facilities where COVID-19 is materially affecting operations." *See* Memorandum from the Attorney General to the Director of the Bureau of Prisons (Apr. 3, 2020), available at https://www.justice.gov/file/1266661/download.

But under section 12001(b)(2), "[d]esignation of an inmate's place of confinement, including placement in home confinement, rests within the absolute discretion of the BOP." *United States v. McCloskey*, No. 18-CR-260, 2020 WL 3078332, at *2 (S.D. Ga. June 9, 2020); *see also United States v. Calderon*, No. 1911445, 2020 WL 883084, at *1 (11th Cir. Feb. 24, 2020) (explaining that under 34 U.S.C. § 60541(g)(1)(A), the Attorney General "may" release eligible

elderly offenders, and the district court was without jurisdiction to grant relief).  Therefore, the district court has no authority to grant relief under section 12003(b)(2).

However, the defendant's request might be invoking a similar provision of the Second Chance Act.  "The Second Chance Act of 2007 . . . increases a federal prisoner's eligibility for pre-release placement in a halfway house from 6 to 12 months, and requires the Bureau of Prisons (BOP) to make an individual determination that ensures that the placement is 'of sufficient duration to provide the greatest likelihood of successful reintegration into the community.'" *Vasquez v. Strada*, 684 F.3d 431, 432-33 (3d Cir. 2012) (quoting 18 U.S.C. § 3624(c)(6)(C)).  "In accordance with the Act, regulations were issued so that placement in a community correctional facility by the BOP is conducted in a manner consistent with 18 U.S.C. § 3621(b)."  *Ibid.* (citing 28 C.F.R. § 570.22).  That statute, in turn, states that any recommendation by the sentencing court that a convicted person serve a term of imprisonment in a community corrections facility "shall have no binding effect on the authority of the Bureau . . . to determine or change the place of imprisonment of that person."  18 U.S.C. § 3621(b).  Relevant factors that the BOP shall consider include "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence; and (5) any pertinent policy statement issued by the Sentencing Commission."  *Lovett v. Hogsten*, No. 09-5605, 2009 WL 5851205, at \*1 (6th Cir. Dec. 29, 2009) (citing 18 U.S.C. § 3621(b)).

Lee's prison record is clear.  Nonetheless, the Court believes that the BOP is in a better position than the Court to assess the propriety of the defendant's placement for reentry at an appropriate time, based on the applicable statutory factors and all of the information then available.

III.

Lee has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motions for compassionate release (ECF No. 91, 92) are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   August 26, 2020